In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1067

MAXIMO FERNANDEZ, *et al.*,

*Plaintiffs-Appellants*,

*v.*

KERRY, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cv-08971 — **Franklin U. Valderrama**, *Judge*.

ARGUED SEPTEMBER 14, 2021 — DECIDED SEPTEMBER 20, 2021

Before SYKES, *Chief Judge*, and EASTERBROOK and BRENNAN, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Five persons who used to work for Kerry, Inc., in Illinois filed this suit as a class action in state court. They seek damages under the state's Biometric Information Privacy Act (BIPA or the Act), 740 ILCS 14/5 to 14/25. The Act requires private entities to obtain consent before collecting or using biometric information, including fingerprints. (It has other provisions that we need not discuss.)

In 2011 Kerry began requiring workers to use fingerprints to clock in and out. Plaintiffs say that Kerry did not obtain their consent before doing so. Kerry removed the suit to federal court under 28 U.S.C. §1453, asserting that the class's total damages could exceed $5 million and that the statutory requirement of some diverse citizenship is satisfied. Plaintiffs do not deny these jurisdictional allegations.

Kerry asked the district court to dismiss the suit as preempted by §301 of the Labor Management Relations Act, 29 U.S.C. §185, because resolution depends on interpretation of collective-bargaining agreements between Kerry and the union that represented plaintiffs while they worked there. Federal law prevents states from interfering in relations between unions and private employers. We held in *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 903–05 (7th Cir. 2019), that provisions in the Railway Labor Act parallel to §301 prohibit workers from bypassing their unions and engaging in direct bargaining with their employers about how to clock in and out. We doubted that Illinois has attempted to give unionized workers a privilege to bargain directly with employers—after all, the Act permits an employee's "legally authorized representative" to consent to the collection and use of biometric information. See 740 ILCS 14/15(b). If an employer asserts that a union *has* consented, then any dispute about the accuracy of that contention is one about the meaning of a collective-bargaining agreement and must be resolved between the union and the employer. See, e.g., *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). That means an adjustment board under the Railway Labor Act; under the LMRA it usually means arbitration.

In *Miller* the employers plausibly contended that the unions had consented. We held that this is enough to prevent suits by individual workers. *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146, 1156 (7th Cir. 2020), suggested that the same result would obtain in litigation under the LMRA but refrained from a formal decision on the issue. In our suit the district court deemed *Miller* controlling when the collective-bargaining agreement is governed by the LMRA. 2020 U.S. Dist. LEXIS 223075 (N.D. Ill. Nov. 30, 2020). As a result it dismissed plaintiffs' complaint.

Plaintiffs insist that the Railway Labor Act is "more preemptive" than the Labor Management Relations Act, but the Supreme Court has equated the two. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). Plaintiffs also contend that, although the means of clocking in and out may be mandatory subjects of collective bargaining under the Railway Labor Act, they are only permissive subjects under the Labor Management Relations Act. We need not decide whether that is so. It is enough to recognize that, whether a topic of bargaining be mandatory (in the sense that the employer must bargain about it on the union's demand) or permissive, the union is the workers' agent. If labor and management want to bargain collectively about particular working conditions, they are free to do so. Workers cannot insist that management bypass the union and deal with them directly about these subjects. After all, the statute says that a certified union is each worker's *exclusive* representative on collective issues. 29 U.S.C. §159(a).

Here, as in *Miller*, the employer invokes a management-rights clause. We remarked in *Miller*: "Whether [the] unions *did* consent to the collection and use of biometric data, or perhaps grant authority through a management-rights clause, is

a question for [decision under the agreement]. Similarly, the retention and destruction schedules for biometric data, and whether [employers] may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management. States cannot bypass the mechanisms of [federal law] and authorize direct negotiation or litigation between workers and management." 926 F.3d at 903 (emphasis in original). "It is not possible even in principle to litigate a dispute about how an [employer] acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf." *Id*. at 904. See also *Brazinski v. Amoco Petroleum Additives Co*., 6 F.3d 1176, 1179 (7th Cir. 1993). We held in *Miller* that it was for an adjustment board—as here it is for an arbitrator—to decide whether the employer properly obtained the union's consent.

Anticipating that we would find *Miller* controlling, plaintiffs ask us to send this dispute to arbitration. Apart from the fact that plaintiffs did not make such a request in the district court, there is the fact that collective-bargaining agreements usually leave grievances to be worked out between the union and management. Counsel said at argument that the collective-bargaining agreements in question do not permit workers to demand arbitration if the union is content to forego that procedure, and they added that the union—Local 781 of the Miscellaneous Warehousemen, Airline, Automotive Parts, Service, Tire and Rental, Chemical and Petroleum, Ice, Paper, and Related Clerical and Production Employees Union—has not requested arbitration. We are not authorized to usurp the union's authority to decide whether a grievance with management needs an arbitrator's resolution (or, indeed, whether there is any grievance to resolve). And plaintiffs have not

contended that Local 781's choices violate its duty of fair representation, nor have they joined it as a defendant.

AFFIRMED