2022 IL App (1st) 210011

FIRST DISTRICT
SECOND DIVISION
February 22, 2022

No. 1-21-0011

| | | |
|---|---|---|
| WILLIAM WALTON, Individually and on Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 CH 04176 |
| ROOSEVELT UNIVERSITY, | ) ) ) | Honorable Anna A. Demacopoulos, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

OPINION

¶ 1    This case is before the court for an answer to a certified question under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). The certified question asks us to determine whether claims asserted by union member-employees under the Biometric Information Privacy Act (Privacy Act) (740 ILCS 14/1 *et seq.* (West 2020)) are preempted by federal law. The question certified by the circuit court for appeal is:

"Does Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) preempt [Privacy Act] claims (740 ILCS 14/1) asserted by bargaining unit employees covered by a collective bargaining agreement?"

¶ 2    The defendant argued that the claims asserted by the plaintiff are preempted and moved to dismiss the complaint. The circuit court denied the motion to dismiss but certified the relevant question for interlocutory review. For the following reasons, we conclude that the plaintiff's claims are preempted under the Labor Management Relations Act (29 U.S.C. § 185 (2018)) and answer the certified question in the affirmative. Having answered the certified question, we remand the case to the circuit court for further proceedings.

¶ 3                                    BACKGROUND

¶ 4    Plaintiff William Walton was an employee of defendant Roosevelt University (Roosevelt). Walton worked in Roosevelt's campus safety department. Like the other employees in the campus safety department, Walton was a member of the SEIU Local 1, a collective bargaining unit. Roosevelt required Walton and similarly situated employees to enroll scans of their hand onto a biometric timekeeping device as a means of clocking in and out of work. During the course of his employment, Walton allegedly scanned his hand geometry repeatedly for the purpose of Roosevelt keeping track of the hours he worked.

¶ 5    Under Illinois law, private entities that collect and use individuals' biometric data, such as scans of their hand, must secure informed consent from those individuals or their legally authorized representatives and take other steps to ensure that the data is not stolen or used for improper purposes. See generally 740 ILCS 14/1 *et seq.* (West 2020). Recognizing the importance of biometric identification data to the individual and in recognition of its immutability, the General Assembly enacted the Privacy Act to "regulat[e] the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* § 5(g). When an entity collects biometric information but fails to comply with the Privacy Act's requirements, the

Privacy Act provides that aggrieved individuals are entitled to file a civil action and collect damages for each violation of the Privacy Act committed by the collecting entity. *Id.* § 20.

¶ 6     Among other requirements, in order to comply with the Privacy Act, a private entity that wishes to collect and use individuals' biometric information must secure informed consent from the individual or his legally authorized representative before collecting and storing the data. *Id.* § 15(b). Further, the collecting entity must develop, publish, and follow a publicly available retention schedule and destruction guidelines. *Id.* § 15(a). The collecting entity is prohibited from disclosing the biometric data to third parties without consent from the individual or his legally authorized representative. *Id.* § 15(d).

¶ 7     Walton filed this case seeking damages from Roosevelt for its collection, storage, use, and dissemination of his biometric data. Specifically, Walton claims that Roosevelt collected and used his biometric data without complying with the Privacy Act's informed consent requirements and without developing and following the required retention policies. Walton also claims that Roosevelt disclosed his biometric data to a third-party payroll service without his consent. Roosevelt moved to dismiss the complaint.

¶ 8     In its motion to dismiss, Roosevelt argued that Walton's claims are preempted by the Labor Management Relations Act (29 U.S.C. § 141 *et seq.* (2018)). In moving to dismiss, Roosevelt's position was that the manner by which employees clock in and out of work is a subject covered by the collective bargaining agreement between Roosevelt and Walton's union. Thus, Roosevelt argued, Walton's claims are preempted by the Labor Management Relations Act, which governs most disputes arising under collective bargaining agreements. The Labor Management Relations Act has been interpreted to preempt any claims that substantially depend on the analysis of a

collective bargaining agreement. See *International Brotherhood of Electrical Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 857 (1987).

¶ 9    Roosevelt pointed to the management rights clause of the collective bargaining agreement, which gives the employer broad authority to control the terms of the employees' employment.

"Subject to the provision of this Agreement, the Employer shall have the exclusive right to direct the employees covered by this Agreement. Among the exclusive rights of management, but not intended as a wholly inclusive list of them are: the right to plan, direct, and control all operations performed in the building, to direct the working force, to transfer, hire, demote, promote, discipline, suspend, or discharge, for proper cause, to subcontract work and to relieve employees from duty because of lack of work or for any other legitimate reason. The union further understands and agrees that the Employer provides an important service to its tenants of a personalized nature to fulfill their security needs, as those needs are perceived by the Employer and the tenants. Accordingly, this Agreement shall be implemented and interpreted by the parties so as to give consideration to the needs and preferences of the tenants."

¶ 10    The circuit court disagreed with Roosevelt that Walton's claims were preempted by federal law. The circuit court reasoned that claims arising under the Privacy Act are "not intertwined with or dependent substantially upon consideration of terms of a collective bargaining agreement." The circuit court explained that a person's rights under the Privacy Act exist independently of their employment and any given collective bargaining agreement. Ultimately, the circuit court concluded that "[p]reemption is not appropriate in this matter," and it denied the motion to dismiss.

¶ 11 Roosevelt moved the trial court to reconsider its ruling on the motion to dismiss or, alternatively, to certify a question for review by this court under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). The court denied the motion to reconsider but did certify the question at issue in the case for appeal. We granted Roosevelt's application for review of the certified question. The parties fully briefed the issue, and we also received *amicus* briefs from interested third parties on this important labor law question.

¶ 12                                    ANALYSIS

¶ 13 Rule 308 authorizes this court to allow an appeal from an interlocutory order when the trial court has found that (1) the order involves a question of law as to which there is substantial ground for difference of opinion and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation. Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019); *Santiago v. E.W. Bliss Co.*, 2012 IL 111792, ¶ 12. Because it is a prerequisite that a certified question presents a question of law, our review of a certified question is done without deference to the circuit court and is, therefore, *de novo*. *Williams v. Athletico, Ltd.*, 2017 IL App (1st) 161902, ¶ 9.

¶ 14 The certified question we are presented with in this appeal is:

"Does Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) preempt [Privacy Act] claims (740 ILCS 14/1) asserted by bargaining unit employees covered by a collective bargaining agreement?"

¶ 15 Article VI of the Constitution of the United States of America provides that federal law "shall be the supreme Law of the Land." U.S. Const., art. VI, cl. 2. Under the supremacy clause, a federal statute preempts a state law when there is " '(1) express preemption—where Congress has expressly preempted state action; (2) implied field preemption—where Congress has implemented a comprehensive regulatory scheme in an area, thus removing the entire field from the state realm;

or (3) implied conflict preemption—where state action actually conflicts with federal law.' " *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 14 (quoting *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 39-40 (2010)). " 'The key inquiry in all preemption cases is the objective or purpose of Congress in enacting the particular statute. The doctrine requires courts to examine the Federal statute in question to determine whether Congress intended it to supplant State laws on the same subject.' " *Coram v. State of Illinois*, 2013 IL 113867, ¶ 71 (quoting *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 438 (1986)).

¶ 16    In the field of labor management specifically, Congress has granted federal district courts exclusive jurisdiction over state law claims when the resolution of such claims depends on the interpretation or administration of a collective bargaining agreement. See 29 U.S.C. § 185(a); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-11 (1985). In general, where a collective bargaining agreement exists between employers and employees who are parties to litigation, their disputes fall within the exclusive purview of federal labor laws, not state laws, in order to ensure uniform interpretation of collective bargaining agreements. *Gelb v. Air Con Refrigeration & Heating, Inc.*, 356 Ill. App. 3d 686, 692 (2005) (citing *National Metalcrafters v. McNeil*, 784 F.2d 817, 823 (7th Cir. 1986)). "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law ***." *Allis-Chalmers*, 471 U.S. at 211.

¶ 17    However, not every employment dispute where a collective bargaining agreement is involved is automatically preempted by federal law. *Id.* Instead, whether the Labor Management Relations Act preempts a state law claim requires a case-by-case factual analysis. *Byrne v. Hayes Beer Distributing Co.*, 2018 IL App (1st) 172612, ¶ 21. For preemption to apply, the employer need only advance a nonfrivolous argument that the complained-of conduct was authorized by the

collective bargaining agreement, like in a management rights clause. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993).

¶ 18    While this appeal was pending, the United States Court of Appeals for the Seventh Circuit directly addressed the question brought to bear in this appeal. In *Fernandez v. Kerry, Inc.*, 14 F.4th 644, 646-47 (7th Cir. 2021), the court of appeals found that unionized employees' claims that their employer violated the Privacy Act were preempted by the Labor Management Relations Act (29 U.S.C. § 185). As Walton conceded at oral argument, the relevant factual and legal circumstances of this case are indistinguishable from *Fernandez*, so our real objective in this appeal becomes to determine whether the court of appeals' ruling on a matter of federal law is wrongly decided in such a way that we deem it to be without logic and reason. See *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 54.

¶ 19    In *Fernandez*, the court of appeals explained that, when the employer invokes a broad management rights clause from a collective bargaining agreement in response to a Privacy Act claim, the claim is preempted because it requires an arbitrator to determine whether the employer and the union bargained about the issue or the union consented on the employees' behalf. *Fernandez*, 14 F.4th at 646. The court in *Fernandez* refers substantially to its recent decision in *Miller v. Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019), in which it held that a Privacy Act claim was preempted in the same way under the Railway Labor Act (45 U.S.C § 152 (2018)). See *Miller*, 926 F.3d at 903-04.

¶ 20    In contrast to finding the court of appeals' decision to be without logic or reason (see *State Bank of Cherry*, 2013 IL 113836, ¶ 54), we think it is the proper interpretation of the Privacy Act when viewed through the prism of the Labor Management Relations Act's preemptive effect. The Privacy Act contemplates the role of a collective bargaining unit that may act as an intermediary

on issues concerning the employee's biometric information. See 740 ILCS 14/15(b) (West 2020). The Privacy Act provides that "[n]o private entity may collect *** a person's *** biometric identifier or biometric information, unless it first: (1) informs the subject *or the subject's legally authorized representative* in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject *or the subject's legally authorized representative* in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information or the *subject's legally authorized representative*." (Emphases added.) *Id.* Under the Privacy Act, it is clearly within a union's purview to negotiate with the employer about its members' biometric information. The grievances that Walton has raised against Roosevelt are all things that his union *can* bargain about, but his complaint raises the question of whether such bargaining has occurred, either implicitly or explicitly.

¶ 21     The collective bargaining agreement at issue in this case contains a broad management rights clause. The agreement makes the union the sole and exclusive bargaining agent for the employees in the union. Walton and any other similarly situated employees agreed to their employment being covered by the subject collective bargaining agreement. The timekeeping procedures for workers are a topic for negotiation that is clearly covered by the collective bargaining agreement and requires the interpretation or administration of the agreement. The members of the collective bargaining unit in this case have surrendered their individual right to bargain with their employer about timekeeping procedures, even where those timekeeping procedures also include the collection and use of the employees' biometric information. See *Miller*, 926 F.3d at 904 ("That biometric information concerns workers' privacy does not distinguish it

from many other subjects, such as drug testing, that are routinely covered by collective bargaining and on which unions give consent on behalf of the whole bargaining unit."). The issue here is not unique to Walton, it concerns every member of his union in the same manner. It is impossible to consider whether Walton and his similarly situated fellow employees have a claim under the Privacy Act without first determining whether their union consented on their behalf, which the Act permits the union to do and which the members arguably empower the union to do on their behalf. Whether the management rights clause at issue in Walton's collective bargaining agreement covers biometric information is a question that itself results in preemption. See *Brazinski*, 6 F.3d at 1179.

¶ 22    Walton argues that his claims are not "substantially dependent" on an interpretation of the collective bargaining agreement. He points out that there is no reference to biometric information in the collective bargaining agreement and that the terms of the agreement in no way make the union the authorized representative for providing consent to biometric data collection. However, federal courts interpreting similar collective bargaining agreements with similar management rights clauses have found that the broad authority given to the employer to manage the business, direct the workforce, and set the rules of employment is sufficient to result in the preemption of claims arising under the Privacy Act. See, *e.g.*, *Fernandez*, 14 F.4th 646-47; *Miller*, 926 F.3d at 903; *Williams v. Ecolab Inc.*, No. 21 C 695, 2021 WL 3674608, at *3 (N.D. Ill. Aug. 19, 2021); *Abudayyeh v. Envoy Air, Inc.*, No. 20-cv-00142, 2021 WL 3367173, at *7 (N.D. Ill. Aug. 3, 2021); *Singleton v. B.L. Downey Co.*, No. 21 C 236, 2021 WL 3033393, at *2 (N.D. Ill. July 19, 2021); *Carmean v. Bozzuto Management Co.*, No. 20 C 5294, 2021 WL 2433649, at *1 (N.D. Ill. June 15, 2021). Moreover, privacy in the workplace is an ordinary subject of bargaining. *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 710 (7th Cir. 1992). Unions frequently bargain for matters concerning their members' privacy and protection. Collective bargaining agreements may include

express and implied terms (*id.*), and it is up to an arbitrator, not a state court, to define the scope of the parties' agreement (*Fernandez*, 14 F.4th at 646-47). Ultimately, Walton acknowledges that *Fernandez* and the other federal court decisions discussed above address the same factual and legal issue raised here, but he argues that the federal courts in those cases were wrong, and he urges us to reach the opposite conclusion.

¶ 23 When an Illinois court interprets a federal statute like the Labor Management Relations Act (29 U.S.C. § 141 *et seq.*), we give "considerable weight" to the decisions of federal courts that have addressed the issue. (Emphasis omitted.) *State Bank of Cherry*, 2013 IL 113836, ¶¶ 33, 35. Our supreme court has consistently recognized the importance of maintaining a uniform interpretation of federal statutes and has instructed that when, federal decisions interpreting federal statutes are uniform, we should usually follow course. *Id.* ¶ 34. When an issue of interpreting a federal statute has been uniformly decided in federal court and the identical factual and legal issue is raised in this court, we will follow the federal courts' decisions unless we find them to be "wrongly decided." (Internal quotation marks omitted.) *Id.* ¶ 47.

¶ 24 The issue in this case has been uniformly decided in federal courts in favor of preemption. The Court of Appeals for the Seventh Circuit recently addressed the issue raised here directly and previously addressed the issue tangentially. The federal district court has addressed the issue on more than a dozen occasions, and all of the authority comes down in favor of finding preemption. "[W]e may choose not to follow Seventh Circuit or uniform lower federal court precedent if we find that precedent to be wrongly decided because we determine the decision to be without logic or reason." *Id.* ¶ 54. Here, to the contrary, we find the reasoning expressed by the federal courts to be sound, and we decline to find that all the federal decisions are wrongly decided and without

logic or reason. See *id.* (we will follow and apply uniform federal application of federal law provided it is not illogical and unreasonable).

¶ 25    Roosevelt suggests that the union consented to the collection and use of biometric data either through negotiation or through the management rights clause of the collective bargaining agreement. We must take into consideration the nature of claims as well as the defenses when we determine whether preemption applies. *Jones v. Caterpillar Tractor Co.*, 241 Ill. App. 3d 129, 137 (1993). Whether it is ultimately true that Walton's union, in fact, consented to the procedures at issue here either expressly or implicitly is not for us to determine at this stage. Such a question is reserved for arbitration or other bargained-for grievance procedures under the Labor Management Relations Act. *Fernandez*, 14 F.4th at 646. Certainly Roosevelt has met the low bar of advancing a nonfrivolous argument that bargained-for rights are at issue in this dispute (*Williams*, 2021 WL 3674608, at *4), and therefore it has met its burden for demonstrating that the claims are preempted under federal law. See *Brazinski*, 6 F.3d at 1179.

¶ 26    As a general principle, "[f]ederal law prevents states from interfering in relations between unions and private employers." *Fernandez*, 14 F.4th at 645. When workers unionize and agree to be bound by a collective agreement, they forgo the right to raise some of their grievances on an individualized basis in state court. The federal court of appeals has found that there is no room for individual employees to sue for violations of the Privacy Act where the interpretation and administration of their collective bargaining agreement must occur before such questions can be resolved. *Miller*, 926 F.3d at 904. Whether the question is about the more mundane issue of timekeeping or the more important issue of employee privacy rights, both questions require resort to the collective bargaining agreement.

¶ 27 Walton and his fellow unionized employees are not prohibited from pursuing redress for a violation of their right to biometric privacy—they are simply required to pursue those rights through the grievance procedures in their collective bargaining agreement rather than in state court in the first instance. Walton cannot bypass his union, his sole and exclusive bargaining agent, to demand that Roosevelt deal with him directly on this issue. Walton comes to the court attempting to represent a class of similarly situated employees over a workplace grievance, but that is a place for his union, not Walton himself. Federal law prevents state courts from stepping in and usurping the bargained-for dispute resolution framework where the parties have elected to establish a working relationship that comes within the purview of the Labor Management Relations Act. Accordingly, we answer the certified question in the affirmative and find that Privacy Act claims asserted by bargaining unit employees covered by a collective bargaining agreement are preempted under federal law.

¶ 28                                          CONCLUSION

¶ 29    Certified question answered; cause remanded.

**No. 1-21-0011**

| | |
|---|---|
| **Cite as:** | *Walton v. Roosevelt University*, 2022 IL App (1st) 210011 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-04176; the Hon. Anna H. Demacopoulos, Judge, presiding. |
| **Attorneys for Appellant:** | David M. Schultz, John P. Ryan, and Adam R. Vaught, of Hinshaw & Culbertson LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ryan F. Stephan, James B. Zouras, and Haley R. Jenkins, of Stephan Zouras, LLP, of Chicago, for appellee. |
| *Amicus Curiae***:** | Catherine Simmons-Gill, of Offices of Catherine Simmons-Gill, LLC, of Chicago, for *amici curiae* National Employment Lawyers Association *et al.* |
| | Melissa A. Siebert, Matthew C. Wolfe, and Elisabeth A. Hutchinson (*pro hac vice*), of Shook, Hardy & Bacon L.L.P., of Chicago, for *amicus curiae* Illinois Chamber of Commerce. |