**2023 IL 128338**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 128338)

WILLIAM WALTON, Appellant, v. ROOSEVELT UNIVERSITY, Appellee.

*Opinion filed March 23, 2023.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1    In this appeal, the Cook County circuit court certified the following question for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019):

"Does Section 301 of the Labor Management Relations Act (29 U.S.C.[ ] § 185 [(2018)]) preempt [Biometric Information Privacy Act] claims (740 ILCS 14/1

[(West 2018)]) asserted by bargaining unit employees covered by a collective bargaining agreement?"

The appellate court answered the certified question in the affirmative. 2022 IL App (1st) 210011, ¶ 2. This court allowed William Walton's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). For the following reasons, we answer the certified question in the affirmative, affirm the judgment of the appellate court, and remand the cause to the circuit court for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3        In March 2019, plaintiff, William Walton, filed a class-action complaint against his former employer, defendant Roosevelt University (Roosevelt), alleging Roosevelt's collection, use, storage, and disclosure of Walton's and similarly situated employees' biometric data violated the Biometric Information Privacy Act (Privacy Act) (740 ILCS 14/15(a), (b), (d) (West 2018)).

¶ 4        According to the complaint, Walton was employed in Roosevelt's campus safety department from January 2018 until January 2019. As a condition of employment, Roosevelt required Walton and similarly situated employees to enroll scans of their hand geometry onto a biometric timekeeping device as a means of clocking in and out of work. Walton alleged that (1) he was never provided with nor signed a release consenting to the collection, storage, or dissemination of his biometric data; (2) he had never been informed of any biometric data retention policy developed by Roosevelt; and (3) he had never been informed of the specific purpose or length of time for which his biometric information was being stored. Specifically, Walton claimed Roosevelt violated (1) section 15(a) of the Privacy Act (*id.* § 15(a)), by failing to develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers or information; (2) section 15(b) of the Privacy Act (*id.* § 15(b)), by failing to provide notice and to obtain written consent before colleting, using, and storing Walton's biometric identifiers or information; and (3) section 15(d) of the Privacy Act (*id.* § 15(d)), by disclosing or otherwise disseminating Walton's biometric identifier or information to a third party without consent. Walton sought damages, injunctive relief, and reasonable attorney fees.

¶ 5        In July 2019, Roosevelt filed a motion to dismiss Walton's class-action complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)), alleging Walton's Privacy Act claims were preempted by section 301 of the Labor Management Relations Act, 1947 (LMRA) (29 U.S.C. § 185 (2018)). In moving to dismiss, Roosevelt stated that Walton was a member of SEIU, Local 1, a collective bargaining unit, while he worked as a nonsupervisory security employee for Roosevelt and thus agreed to a collective bargaining agreement (CBA) between Roosevelt and Walton's union. Accordingly, Roosevelt argued Walton's claims under the Privacy Act were preempted by the LMRA because the manner by which any employee clocks in and out was a subject covered by a broad management-rights clause in the CBA. In support of federal preemption, Roosevelt cited the United States Court of Appeals for the Seventh Circuit's decision in *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019), which held that federal labor law preempts Privacy Act claims when the claims require interpretation or administration of a CBA.

¶ 6        In May 2020, the circuit court denied Roosevelt's motion to dismiss, finding *Miller* distinguishable and concluding that preemption was inapplicable in this matter because a claim under the Privacy Act "is not intertwined with or dependent substantially upon consideration of terms of [a] collective bargaining agreement" where a "person's rights under [the Privacy Act] exist independently of both employment and any given CBA."

¶ 7        Roosevelt filed a motion to reconsider or, in the alternative, to certify a question for immediate appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). The circuit court denied Roosevelt's motion to reconsider but certified the following question for interlocutory appeal: "Does Section 301 of the Labor Management Relations Act (29 U.S.C.[ ] § 185) preempt [Privacy Act] claims (740 ILCS 14/1 [(West 2018)]) asserted by bargaining unit employees covered by a collective bargaining agreement?"

¶ 8        The appellate court answered the certified question in the affirmative, holding "that Privacy Act claims asserted by bargaining unit employees covered by a collective bargaining agreement are preempted under federal law." 2022 IL App (1st) 210011, ¶ 27. The court found the Seventh Circuit recently addressed this question in *Fernandez v. Kerry, Inc.*, 14 F.4th 644 (7th Cir. 2021). 2022 IL App

(1st) 210011, ¶ 18. The court noted that Walton also conceded at oral argument that the relevant factual and legal circumstances of this case are indistinguishable from *Fernandez*. *Id.* Therefore, the court determined its real objective in the appeal was to determine whether the Seventh Circuit's ruling on a matter of federal law lacked logic or reason and was, therefore, wrongly decided. *Id.* (citing *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 54).

¶ 9        The appellate court recognized the Seventh Circuit in *Fernandez*, 14 F.4th at 646-47, held that unionized employees' claims that their employer violated the Privacy Act were preempted by the LMRA (29 U.S.C. § 185). 2022 IL App (1st) 210011, ¶ 18. The court stated that in *Fernandez*

> "the court of appeals explained that, when the employer invokes a broad management rights clause from a collective bargaining agreement in response to a Privacy Act claim, the claim is preempted because it requires an arbitrator to determine whether the employer and the union bargained about the issue or the union consented on the employees' behalf." *Id.* ¶ 19 (citing *Fernandez*, 14 F.4th at 646).

The court further acknowledged "[t]he court in *Fernandez* refers substantially to its recent decision in *Miller v. Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019), in which it held that a Privacy Act claim was preempted in the same way under the Railway Labor Act (45 U.S.C. § 152 (2018))." *Id.* (citing *Miller*, 926 F.3d at 903-04).

¶ 10       The appellate court determined *Fernandez* reached the proper conclusion, as the Privacy Act contemplates the role of a collective bargaining unit acting as an intermediary on issues concerning an employee's biometric information. *Id.* ¶ 20 (citing 740 ILCS 14/15(b) (West 2018) (prohibiting private entities from collecting a person's biometric information without obtaining consent from the subject or the subject's legally authorized representative)). The court found the CBA in this case contained a broad management-rights clause. *Id.* ¶ 21. Thus, the court stated "[t]he timekeeping procedures for workers are a topic for negotiation that is clearly covered by the collective bargaining agreement and requires the interpretation or administration of the agreement." *Id.*

¶ 11    While the appellate court acknowledged Walton's argument that there was no reference to biometric information in the CBA, it found federal courts interpreting similar CBAs containing similar management-rights clauses have found the broad authority granted to the employer is sufficient to preempt Privacy Act claims. *Id.* ¶ 22 (citing, *inter alia*, *Fernandez*, 14 F.4th at 646-47, and *Miller*, 926 F.3d at 903). Therefore, the court determined the "issue in this case has been uniformly decided in federal courts in favor of preemption," found the "reasoning expressed by the federal courts to be sound," and "declin[ed] to find that all the federal decisions are wrongly decided and without logic or reason." *Id.* ¶ 24 (citing *State Bank of Cherry*, 2013 IL 113836, ¶ 54).

¶ 12    The appellate court concluded, because Roosevelt advanced a nonfrivolous argument that bargained-for rights are at issue, it met its burden to demonstrate that the claims are preempted under federal law. *Id.* ¶ 25. Accordingly, the court stated, "Walton and his fellow unionized employees are not prohibited from pursuing redress for a violation of their right to biometric privacy—they are simply required to pursue those rights through the grievance procedures in their collective bargaining agreement rather than in state court in the first instance." *Id.* ¶ 27. The court remanded the matter to the circuit court. *Id.* ¶ 29.

¶ 13    This court allowed Walton's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2020). We allowed the National Employment Lawyers Association (NELA)/Illinois and Raise the Floor Alliance leave to file a joint brief as *amici curiae* in support of Walton's position. We also allowed the International Brotherhood of Teamsters Local 705 leave to file a brief as *amicus curiae* in support of Walton's position. We further allowed the Illinois Chamber of Commerce leave to file a brief as *amicus curiae* in support of Roosevelt's position. Last, we allowed the Chamber of Commerce of the United States of America, the Restaurant Law Center, the National Retail Federation, and the Illinois Restaurant Association leave to file a joint brief as *amici curiae* in support of Roosevelt's position. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

## II. ANALYSIS

Initially, we note the narrow focus in this appeal. Currently, we are not called upon to resolve Plaintiff's claims. Instead, the task before this court is to answer the certified question:

"Does Section 301 of the Labor Management Relations Act (29 U.S.C.[ ] § 185) preempt [Privacy Act] claims (740 ILCS 14/1 [(West 2018)]) asserted by bargaining unit employees covered by a collective bargaining agreement?"

### A. Standard of Review

A certified question under Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016) presents a question of law subject to *de novo* review. *Eighner v. Tiernan*, 2021 IL 126101, ¶ 18. "Certified questions must not seek an application of the law to the facts of a specific case." *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21. "This court's scope of review is generally limited to the certified question." *Id.* ¶ 25.

### B. Federal Preemption

The certified question requires us to determine whether Privacy Act claims brought by unionized employees subject to a CBA are preempted by federal law. "Congress' power to pre-empt state law is derived from the Supremacy Clause of Art. VI of the Federal Constitution." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985); see U.S. Const., art. VI, cl. 2. Congressional power in the area of labor relations is long established. *Allis-Chalmers Corp.*, 471 U.S. at 208. "Congress, however, has never exercised authority to occupy the entire field in the area of labor legislation." *Id.* Therefore, the question of whether a certain state action is preempted by federal law is one of congressional intent. *Id.*

#### 1. *The Labor Management Relations Act*

Section 301 of the LMRA states:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as

defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a) (2018).

¶ 22                             2. *Federal Court Interpretation of Federal Statutes*

¶ 23         "When interpreting federal statutes, [this court] looks to the decisions of the United States Supreme Court and federal circuit and district courts. [Citation.] United States Supreme Court interpretation of federal law is clearly binding on this court. However, in the absence of a United States Supreme Court decision, the weight this court gives to federal circuit and district court interpretations of federal law depends on factors such as uniformity of law and the soundness of the decisions." *State Bank of Cherry*, 2013 IL 113836, ¶ 33.

¶ 24         "[T]his court has consistently recognized the importance of maintaining a uniform body of law in interpreting federal statutes if the federal courts are not split on an issue." *Id.* ¶ 34. "Thus, uniformity of the law continues to be an important factor in deciding how much deference to afford federal court interpretations of federal law." *Id.* ¶ 35. While this court is bound by the United States Supreme Court, if lower federal courts are uniform in their interpretation of a federal statute, this court, in the interest of preserving unity, will give considerable weight to those courts' interpretations of federal law and find them to be highly persuasive. *Id.* However, this court "may choose not to follow Seventh Circuit or uniform lower federal court precedent if we find that precedent to be wrongly decided because we determine the decision to be without logic or reason." *Id.* ¶ 54. Importantly, the absence of logic or reason standard is not met just because, had the question initially been before us, we may have ruled in a different manner.

¶ 25         The United States Supreme Court has not addressed the issue presented in this appeal. Therefore, we turn to the lower federal courts to guide our analysis.

¶ 26         Roosevelt argues two separate panels of the Seventh Circuit, in *Miller*, 926 F.3d 898, and *Fernandez*, 14 F.4th 644, have held that Privacy Act claims for use of a time clock are preempted by federal labor law. Walton argues both panels erroneously believed the dispute in each case centered on the employers'

implementation of a timekeeping device, when the actual issue raised, as in all actions brought under the Privacy Act, was whether the entities collected, stored, and disseminated employee biometric data without informed consent—an issue entirely separate from the use of the device itself. Accordingly, Walton argues this court should not follow these decisions because they were outside logic and reason and, therefore, wrongly decided. We analyze both cases in turn.

¶ 27      In *Miller*, the Seventh Circuit addressed airline employees' Privacy Act claims against their employers arising from the employers' use of a biometric timekeeping system, which required employees to clock in and out with their fingerprints. 926 F.3d at 901. The employers responded that the plaintiffs' unions consented to and received notice of the employers' attendance-tracking system on behalf of the plaintiffs "either expressly or through the collective bargaining agreements' management-rights clauses." *Id.* Thus, the employers contended "that, to the extent these matters are disputed, an adjustment board rather than a judge must resolve the difference—and that if state law gives workers rights beyond those provided by federal law and collective bargaining agreements, it is preempted by the Railway Labor Act." *Id.*

¶ 28      In considering the preemption issue, the Seventh Circuit first noted the Privacy Act "provides that a worker *or an authorized agent* may receive necessary notices and consent to the collection of biometric information." (Emphasis in original.) *Id.* at 903 (citing 740 ILCS 14/15(b) (West 2018)). It then found that the plaintiffs' unions constituted authorized agents under the statute. *Id.* Further, the Seventh Circuit noted that "how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of bargaining." *Id.* Thus, the Seventh Circuit determined the question of whether the unions did in fact consent to the collection and use of the plaintiffs' biometric data or grant authority through a management-rights clause is a question for an adjustment board. *Id.* "Similarly, the retention and destruction schedules for biometric data, and whether air carriers may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management." *Id.* Accordingly, the Seventh Circuit held the plaintiffs' claims under the Privacy Act were preempted by the Railway Labor Act (45 U.S.C. § 151 *et seq.* (2018)). *Miller*, 926 F.3d at 903.

¶ 29    Following *Miller*, the Seventh Circuit in *Fernandez* addressed virtually the same issue presented in *Miller* but involving the federal labor statute also at issue in this case—section 301 of the LMRA. In *Fernandez*, unionized employees filed a class-action lawsuit against their former employer arguing the employer violated the Privacy Act when it failed to obtain consent before requiring workers to use their fingerprints to clock in and out of work. 14 F.4th at 645. The employer responded that the plaintiffs' claims were preempted by section 301 of the LMRA because resolution of those claims depended on the interpretation of a CBA between the employer and the union that represented the plaintiffs. *Id.*

¶ 30    The Seventh Circuit referred substantially to the preemption analysis in *Miller* and found it equally applied to claims under section 301 of the LMRA. *Id.* at 646. Therefore, the court ultimately determined that when an employer invokes a broad management-rights clause from a CBA in response to a Privacy Act claim, the claim is preempted because it is up to an arbitrator to determine "whether the employer properly obtained the union's consent." *Id.*

¶ 31    This case is similar to *Fernandez* where here the broad management rights clause in the CBA states,

> "Subject to the provisions of this Agreement, the Employer shall have the exclusive right to direct the employees covered by this Agreement. Among the exclusive rights of management, but not intended as a wholly inclusive list of them are: the right to plan, direct, and control all operations performed in the building, to direct the working force, to transfer, hire, demote, promote, discipline, suspend or discharge, for proper cause, to subcontract work and to relieve employees from duty because of lack of work or for any other legitimate reason. The Union further understands and agrees that the Employer provides an important service to its tenants of a personalized nature to fulfill their security needs, as those needs are perceived by the Employer and the tenants. Accordingly, this Agreement shall be implemented and interpreted by the parties so as to give consideration to the needs and preferences of the tenants."

After reviewing both Seventh Circuit cases, we do not find the decisions in either *Miller* or *Fernandez* to be without logic or reason. See *State Bank of Cherry*, 2013 IL 113836, ¶ 54. Given the language in the CBA and the LMRA, it is both logical and reasonable to conclude any dispute must be resolved according to federal law

and the agreement between the parties. Therefore, in answering the certified question before us, we defer to the uniform federal case law on this matter and find that when an employer invokes a broad management rights clause from a CBA in response to a Privacy Act claim brought by bargaining unit employees, there is an arguable claim for preemption. Accordingly, because we do not believe the federal decisions were wrongly decided, and here the CBA contained a broad management rights clause, we find Walton's Privacy Act claims are preempted by the LMRA. We therefore answer the certified question in the affirmative.

¶ 32                                     III. CONCLUSION

¶ 33        For the foregoing reasons, we answer the certified question in the affirmative, affirm the judgment of the appellate court, and remand the cause to the circuit court for further proceedings.

¶ 34        Certified question answered.

¶ 35        Affirmed and remanded.