2023 IL App (2d) 220180
No. 2-22-0180
Opinion filed August 17, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DONALD JAMES, as Executor of the Estate of Lucille Helen James, Deceased; MARK R. DONESKE, as Executor of the Estate of Rose H. Doneske, Deceased; FRANCES G. DeFRANCESCO, as Executor of the Estate of Jack DeFrancesco, Deceased; PATRICIA VELCICH, as Executor of the Estate of Marion May Heotis, Deceased; FAITH HEIMBRODT, as Independent Administrator of the Estate of Carol Orlando, Deceased, | ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) ) | Nos. 20-L-247, 20-L-259, 20-L-260, 20-L-264 & 20-L-273 |
| GENEVA NURSING AND REHABILITATION CENTER, LLC, d/b/a Bria Health Services of Geneva, | ) ) ) ) | Honorable Susan Clancy Boles, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    This certified-question appeal under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019) comes to us from several consolidated wrongful-death suits against a nursing home where each decedent passed from COVID-19 complications during the opening weeks of the pandemic. Each

complaint alleges that the nursing home both negligently and willfully failed to control the spread of COVID-19 in the facility, which led to the deaths of the decedents. The nursing home sought immunity from the decedents' negligence claims under an executive order (Exec. Order No. 2020-19, 44 Ill. Reg. 6192 (Apr. 1, 2020), https://coronavirus.illinois.gov/content/dam/soi/en/web/coronavirus/documents/executiveorder-2020-19.pdf [https://perma.cc/FG32-BM6L]), issued by Governor J.B. Pritzker during the pandemic's beginning.

¶ 2    The parties presented a question to the circuit court, which was then certified for interlocutory review, asking whether Executive Order No. 2020-19 provides "blanket immunity for ordinary negligence [claims] to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic." For the reasons explained below, we modify the question and answer "yes."

¶ 3                                I. BACKGROUND

¶ 4    At this stage, we take as true all well-pled allegations from the estates' complaints. See *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (1997); *Coley v. Bradshaw & Range Funeral Home, P.C.*, 2020 IL App (2d) 190627, ¶ 16. With minor variations, the complaints are largely uniform and were consolidated in the trial court.

¶ 5    Each decedent was a resident of the Geneva Nursing and Rehabilitation Center, LLC, also known as Bria Health Services of Geneva (Bria). Some decedents had been long-term residents, while others were recent arrivals. According to the complaints, between March and May of 2020, each decedent contracted COVID-19 and died from related respiratory complications or respiratory failure (acute hypoxia) while in the nursing home's care. The complaints generally alleged that the decedents contracted COVID-19 from Bria's failure to quarantine symptomatic staff members and residents adequately and its failure to implement effective procedures for

maintaining hygiene and equipment, including personal protective equipment (PPE) such as masks and gowns, thereby exposing decedents to the virus during this period. The complaints alleged that this was a breach of the nursing home's duty of care, which proximately caused the decedents' deaths.

¶ 6    While the pandemic was in its ascendence, on April 1, 2020, pursuant to the Illinois Emergency Management Agency Act (Act) (20 ILCS 3305/1 *et seq.* (West 2020)), the Governor issued Executive Order No. 2020-19, which was one of the first directives in a series of proclamations to address the COVID-19 outbreak. Within 30 days, the Governor reissued Executive Order No. 2020-19 as Executive Order No. 2020-33 (Exec. Order No. 2020-33, 44 Ill. Reg. 8235 (Apr. 30, 2020), https://coronavirus.illinois.gov/content/dam/soi/en/web/coronavirus/documents/executiveorder-2020-33.pdf [https://perma.cc/6UA5-48NX]). See generally *Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623, ¶ 24. The Governor reissued his same executive order several times during the pandemic; however, this appeal is concerned only with the first two orders, which, for the reader's convenience, we reference collectively as "Executive Order No. 2020-19."

¶ 7    Executive Order No. 2020-19 invoked the Governor's authority under section 21(c) of the Act (20 ILCS 3305/21(c) (West 2020)) to extend ordinary governmental tort immunity (see 745 ILCS 10/1-101 *et seq.* (West 2020)) to nursing homes and health care facilities that "render[ed] assistance or advice at the request of the State" during the Governor's disaster declaration. Exec. Order No. 2020-19, 44 Ill. Reg. 6192 (Apr. 1, 2020). Relevant here, section 3 of Executive Order No. 2020-19 provided as follows:

"Pursuant to Sections 15 and 21(b)-(c) of [the Act], 20 ILCS 3305/15 and 21(b)-(c), I direct that during the pendency of the Gubernatorial Disaster Proclamation, Health Care Facilities

\*\*\* shall be immune from civil liability for any injury or death alleged to have been caused by any act or omission by the Health Care Facility, which injury or death occurred at a time when a Health Care Facility was engaged in the course of rendering assistance to the State by providing health care services in response to the COVID-19 outbreak, unless it is established that such injury or death was caused by \*\*\* willful misconduct \*\*\*." Exec. Order No. 2020-19, § 3, 44 Ill. Reg. 6192 (Apr. 1, 2020).

¶ 8    After the decedents' estates filed their complaints, Bria filed motions to dismiss the decedents' negligence claims with prejudice, asserting that Bria was "render[ing] assistance" to the State when decedents' negligence claims arose and therefore was immune from suit for ordinary negligence. Bria argued that its immunity under the order was an affirmative matter, barring those claims. See 735 ILCS 5/2-619(a)(9) (West 2020). The core of Bria's assertion was that as long as it took such steps to address the pandemic, it was immune from negligence claims regardless of how they arose. In other words, Bria asserted that it was immune from not only negligence claims tied to COVID-19, but also claims for willful misconduct.

¶ 9    Attached to Bria's motion were affidavits from an administrator stating that, in response to the pandemic and "at the direction of" the Illinois Department of Public Health (IDPH), Bria stored PPE, made beds available for incoming patients, and provided additional training to its staff on protective measures such as handwashing. The estates responded that Bria's interpretation of Executive Order No. 2020-19 was incorrect and that the affidavits were insufficient to resolve immunity at the pleading stage of the litigation. The trial court initially denied Bria's motion to dismiss, but after Bria filed a motion to reconsider, the court vacated the denial. Bria then submitted the following question for certification: "Does [EO20-19] provide blanket immunity for

ordinary negligence to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?"

¶ 10    The trial court agreed with Bria that Executive Order No. 2020-19 could reasonably be read in different ways and that answering that question could help resolve a substantial portion of the litigation.  Thus, the court certified the question for our review. The court also denied the estates' motion to reconsider certification.

¶ 11    We granted Bria leave to appeal. Ill. S. Ct. R. 308 (eff. Oct. 1, 2019). We also granted leave for the Illinois Trial Lawyers Association to submit *amicus* briefs and received briefing from the Attorney General on the relevant statutory authority.

¶ 12                                    II. ANALYSIS

¶ 13    At the outset, we note that the certified question, as presented, misstates the relevant issues in this case. "By definition, certified questions are questions of law subject to *de novo* review" (*Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21), and "the scope of our review is limited to the certified question" (*Moore v. Chicago Park District*, 2012 IL 112788, ¶ 9). We are not, however, limited to the *language* of the question as certified. As a reviewing court, we may disregard words or phrases in the question that mischaracterize the issue and instead consider "the question remaining." *Moore*, 2012 IL 112788, ¶¶ 11-14. Here, as is often the case, the "certified question [was] framed as a question of law, but the ultimate disposition [may] depend[ ] on the resolution of a host of factual predicates." (Internal quotation marks omitted.) *Rozsavolgyi*, 2017 IL 121048, ¶ 21. Nevertheless, we can answer the certified question, as reframed, and we answer that modified question in the affirmative.

¶ 14    As the parties have briefed it, the certified question calls into question the constitutional separation of powers and the mechanics of Illinois civil procedure, which could have implications

for nearly every lawsuit in our state's courts. The parties' briefs manifest an awareness of these concepts to an extent, but both sides have given us a distorted presentation of the issues. The estates would have us declare that Executive Order No. 2020-19 exceeded the Governor's authority and is unconstitutional. Bria would like us to say that Executive Order No. 2020-19 grants them "blanket immunity" from nearly all claims arising during the COVID-19 pandemic. The Illinois Trial Lawyers Association suggests we go further and declare that, under Executive Order No. 2020-19, Bria could be immune only for acts directly connected to measures implemented in response to the pandemic. None of these results is tenable, and except for the Attorney General, all parties indirectly suggest that we review the trial court's order initially denying Bria's motion to dismiss the negligence counts—an order that was subsequently vacated. Nevertheless, this is *not* an interlocutory appeal of that order. Our task is to answer the certified question rather than to opine on the propriety of a now-vacated, nonfinal order denying a motion to dismiss. See *Rozsavolgyi*, 2017 IL 121048, ¶ 21. As we explain, with modifications, we can answer the certified question simply and directly under Rule 308.

¶ 15     After careful consideration, we determine that the certified question incorrectly describes the scope of the immunity at issue as well as its source. First, the question's use of the phrase "blanket immunity" is inapt. In modern legal vernacular, two primary modifiers denote the scope of the immunity in question. The first phrase, "absolute immunity," indicates that a defendant is completely exempt from suit for *any* conduct in performing (or not performing) the defendant's official duties. *E.g.*, *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (judicial immunity). Such exemptions are justified because "[i]n the absence of immunity, *** [certain] officials would hesitate to exercise their discretion *** even when the public interest required bold and unhesitating action." *Nixon v. Fitzgerald*, 457 U.S. 731, 744-45 (1982) (presidential immunity). In

contrast, there is also "qualified" or "partial" immunity. This immunity is typically a statutory limitation that bars negligence claims, but *not* claims for willful and wanton misconduct. See, *e.g.*, *Hernandez v. Lifeline Ambulance, LLC*, 2020 IL 124610, ¶ 26 (discussing partial immunity for paramedics); *Corbett v. County of Lake*, 2017 IL 121536, ¶ 35 (discussing partial immunity for state and local authorities for the maintenance of bike trails).

¶ 16    The phrase "*blanket* immunity" connotes *absolute* immunity (*e.g.*, *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 22; *Ries v. City of Chicago*, 242 Ill. 2d 205, 227 (2011)); yet the statutory authority, Executive Order No. 2020-19, and the parties' respective arguments, all conceive that the immunity at issue is only *partial*. In other words, the certified question, as presented, could be taken to erroneously suggest that Bria could be immune from *both* negligence claims *and* claims of willful misconduct. The latter suggestion is a bridge too far.

¶ 17    In addition, the certified question also misconceives where Bria's potential immunity derives from. Any potential immunity would derive from the Illinois Emergency Management Act, not the executive order invoking that Act. As the Attorney General points out, all Executive Order No. 2020-19 did was invoke the Governor's authority to declare a public health emergency, triggering the preexisting, potential statutory immunity for health care facilities under the Act. We look to section 7 of the Act, which empowers the Governor to declare that a disaster exists and to exercise emergency powers for 30 days. 20 ILCS 3305/7 (West 2020). Such orders may be reissued as well. See, *e.g.*, *Fox Fire Tavern, LLC*, 2020 IL App (2d) 200623, ¶¶ 4, 23. Relevant here, section 21(c) of the Act states:

> "(c) Any private person, firm or corporation, and any employee or agent of such person, firm or corporation, who renders assistance or advice at the request of the State, or any political subdivision of the State under this Act during an actual or impending disaster,

shall not be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of willful misconduct." 20 ILCS 3305/21(c) (West 2020).

¶ 18    We note that the Act does not define what it means to "render assistance," but Executive Order No. 2020-19 stated that "for Health Care Facilities, 'rendering assistance' in support of the State's response must include measures such as increasing the number of beds, preserving personal protective equipment, or taking necessary steps to prepare to treat patients with COVID-19." Exec. Order No. 2020-19, § 2, 44 Ill. Reg. 6192 (Apr. 1, 2020). We agree with the Attorney General that the executive order's elaboration is not inconsistent with the relevant portions of the Act. Consequently, we reject the estates' argument that Executive Order No. 2020-19 is unconstitutional, or *ultra vires*, as the executive order neither overrides nor is inconsistent with the General Assembly's grant of authority to the Governor under the Act.

¶ 19    The parties primarily dispute the phrase in section 3 of the executive order immunizing health care facilities when an "injury or death occurred *at a time* when [the facility] was engaged in the course of rendering assistance to the State," which was covered by the Governor's disaster proclamation. (Emphasis added.) Exec. Order No. 2020-19, § 3, 44 Ill. Reg. 6192 (Apr. 1, 2020). We need not parse the executive order's language too closely— particularly its use of the phrase "at a time"—as the parties have. It is axiomatic that an executive order, issued pursuant to statutory authority, cannot convey more than the statute that authorized it. Again, the question is not what the executive order says but rather what the relevant *statute* that the executive order invoked says. See Exec. Order No. 2020-19, § 3, 44 Ill. Reg. 6192 (Apr. 1, 2020) ("Pursuant to Sections 15 and 21(b)-(c) of [the Act], 20 ILCS 3305/15 and 21(b)-(c) ***").

¶ 20    We do not find any ambiguity in section 21(c) of the Act. The statutory authority is clear that, except for willful misconduct, any "private person, firm or corporation" who renders

"assistance or advice at the request of the State *** *during* [a] *** disaster[ ] shall not be civilly liable for causing the death of, or injury to, *any person*." (Emphases added.) 20 ILCS 3305/21(c) (West 2020). Thus, Bria would have immunity from negligence claims arising during the Governor's disaster declaration *if and only if* it can show it was "render[ing] assistance" to the State during this time. This interpretation is consistent with guidance from our supreme court, which has repeatedly observed that, "[w]here the legislature has chosen to limit an immunity to cover *only negligence*, it has unambiguously done so." (Emphasis added.) *In re Chicago Flood Litigation*, 176 Ill. 2d at 196; see also *Barnett v. Zion Park District*, 171 Ill. 2d 378, 391 (1996).

¶ 21    Thus, we modify the certified question to state as follows: "Does Executive Order No. 2020-19, which triggered the immunity provided in 20 ILCS 3305/21(c), grant immunity for ordinary negligence claims to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?" And we answer that question in the affirmative.

¶ 22    We further observe that what it means to "render assistance" to the State during the pandemic is apt to be a fact-bound question not easily disposed of through preliminary pleadings and process. While immunity from tort liability is an affirmative matter that *may* properly be raised in a section 2-619 motion (*Hernandez*, 2020 IL 124610, ¶ 14), it is often a "red flag" to ask courts to evaluate complex legal or factual disputes via a motion to dismiss. See *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 26. We remind the parties that the purpose of a section 2-619 motion to dismiss is to "dispose of issues of law and *easily proved* issues of fact at the outset of litigation." (Emphasis added.) *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). As with more challenging immunity questions, like this one, the trial court will be in the best position to evaluate the quantum of evidence necessary to determine whether a given defendant qualifies for the statutory immunity at issue. See, *e.g.*, *Cates v. Cates*, 156 Ill. 2d 76, 78

(1993) (determining scope of partial immunity on summary judgment).

¶ 23    Finally, we note that we have considered the three federal cases cited by the parties related to this issue—*Walsh v. SSC Westchester Operating Co.*, 592 F. Supp. 3d 737 (N.D. Ill. 2022); *Brady v. SSC Westchester Operating Co.*, 533 F. Supp. 3d 667 (N.D. Ill. 2021); *Claybon v. SSC Westchester Operating Co.*, No. 20-cv-04507, 2021 WL 1222803 (N.D. Ill. Apr. 1, 2021). All three of these cases focus on the text of the Governor's order but do not hinge their analyses on section 21(c) of the Act. Nevertheless, we determine that the result in our case today is consistent with those federal authorities, which may provide some guidance to the trial court on remand.

¶ 24                                        III. CONCLUSION

¶ 25    In sum, we modify the certified question, answer in the affirmative, and remand this cause to the circuit court of Kane County.

¶ 26    Certified question answered; cause remanded.

*James v. Geneva Nursing & Rehabilitation Center, LLC*, **2023 IL App (2d) 220180**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, Nos. 20-L-247, 20-L-259, 20-L-260, 20-L-264, 20-L-273; the Hon. Susan Clancy Boles, Judge, presiding. |
| **Attorneys for Appellant:** | Anne M. Oldenburg and LaDonna L. Boeckman, of HeplerBroom LLC, Robert Marc Chemers and David N. Larson, of Pretzel & Stouffer, Chtrd., and Mark D. Rosen, of IIT Chicago-Kent College of Law, all of Chicago, for appellant. |
| **Attorneys for Appellee:** | Margaret P. Battersby and Gabriel J. Apprati, of Levin & Perconti, of Chicago, and Michael W. Lenert and Christopher J. Warmbold, of Myers & Flowers, LLC, of St. Charles, for appellees. |
| *Amicus Curiae:* | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carson R. Griffis, Assistant Attorney General, of counsel), for *amicus curiae* People of the State of Illinois. |
| | Yvette C. Loizon and Keith A. Hebeisen, of Clifford Law Offices, P.C., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |