**2024 IL 130042**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130042)

DONALD JAMES, as Executor of the Estate of Lucille Helen James, Deceased, *et al.*, Appellants, v. GENEVA NURSING AND REHABILITATION CENTER, LLC, d/b/a Bria Health Services of Geneva, Appellee.

*Opinion filed October 18, 2024.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Cunningham dissented, with opinion.

**OPINION**

¶ 1    In this appeal, the Kane County circuit court certified the following question for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019):

"Does Executive Order 2020-19 provide blanket immunity for ordinary negligence to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?"

¶ 2    The appellate court considered the certified question and determined "the certified question incorrectly describe[d] the scope of the immunity at issue as well as its source." 2023 IL App (2d) 220180, ¶ 15. The court modified the certified question as follows:

" 'Does Executive Order No. 2020-19, which triggered the immunity provided in 20 ILCS 3305/21(c) [(West 2020)], grant immunity for ordinary negligence claims to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?' " *Id.* ¶ 21.

The court answered the modified question in the affirmative. *Id.* This court allowed plaintiffs' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). For the following reasons, we answer the certified question, as modified, in the affirmative, affirm the judgment of the appellate court, and remand the cause to the circuit court for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4                          A. Governor's Response to COVID-19

¶ 5    On March 9, 2020, Illinois Governor J.B. Pritzker declared the entire state of Illinois a disaster area in response to the outbreak of the 2019 novel coronavirus (COVID-19), pursuant to section 7 of the Illinois Emergency Management Agency Act (Act) (20 ILCS 3305/7 (West 2020)). Gubernatorial Disaster Proclamation No. 2020-38, 44 Ill. Reg. 4744 (Mar. 9, 2020), https://www.illinois.gov/content/dam/ soi/en/web/illinois/documents/government/disaster-proclamations/coronavirus/ coronavirus-disaster-proc-03-12-2020.pdf [https://perma.cc/W882-CQA7]. The Governor issued subsequent 30-day disaster proclamations on April 1, 2020, April 30, 2020, and beyond, extending the statewide disaster proclamation until the final proclamation expired on May 11, 2023. See *Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623, ¶ 4; *Governor Issues Disaster Proclamation*, *Coronavirus*,

State of Ill. Exec. & Admin. Orders, https://www.illinois.gov/government/executive-orders.html (last visited June 26, 2024) [https://perma.cc/6JW9-4XGK].

¶ 6        On April 1, 2020, while the disaster proclamation was in effect, the Governor issued Executive Order No. 2020-19, directing health care facilities, including private nursing homes, to "render assistance" to the State by providing health care services in response to the COVID-19 outbreak. Exec. Order No. 2020-19, 44 Ill. Reg. 6192 (Apr. 1, 2020), https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-19.2020.html [https://perma.cc/EKB4-HYNE]. The Governor's purpose in issuing Executive Order No. 2020-19, one of the first directives to address the COVID-19 outbreak, was to "ensur[e] the State of Illinois ha[d] adequate bed capacity, supplies, and providers to treat patients afflicted with COVID-19, as well as patients afflicted with other maladies." *Id.* Section 3 of the executive order provided immunity as follows,

> "Pursuant to Sections 15 and 21(b)-(c) of the [Act], 20 ILCS 3305/15 and 21(b)-(c), I direct that during the pendency of the Gubernatorial Disaster Proclamation, Health Care Facilities, as defined in Section 1 of this Executive Order, shall be immune from civil liability for any injury or death alleged to have been caused by any act or omission by the Health Care Facility, which injury or death occurred at a time when a Health Care Facility was engaged in the course of rendering assistance to the State by providing health care services in response to the COVID-19 outbreak, unless it is established that such injury or death was caused by gross negligence or willful misconduct of such Health Care Facility, if 20 ILCS 3305/15 is applicable, or by willful misconduct, if 20 ILCS 3305/21 is applicable." *Id.* § 3.

¶ 7        On April 30, 2020, the Governor reissued Executive Order No. 2020-19 as Executive Order No. 2020-33. Exec. Order No. 2020-33, 44 Ill. Reg. 8425 (Apr. 30, 2020), https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-33.2020.html [https://perma.cc/8XQZ-M5V2]. In this appeal, we refer to the two orders collectively as "Executive Order No. 2020-19."

¶ 8                                B. Procedural History

- 3 -

¶ 9      The plaintiffs in this case are executors and an independent administrator of the estates of the decedents, former residents of defendant, Geneva Nursing and Rehabilitation Center, LLC, doing business as Bria Health Services of Geneva (Bria). Plaintiffs filed separate wrongful-death lawsuits against Bria, each alleging in a second amended complaint that Bria negligently and willfully failed to control the spread of COVID-19 in the facility, which led to the deaths of the decedents. According to the complaints, between March and May 2020, each decedent contracted COVID-19 and died from related respiratory complications or respiratory failure (acute hypoxia) while in Bria's care. The complaints generally assert that the decedents contracted COVID-19 from Bria's failure to properly quarantine symptomatic staff members and residents and its failure to implement effective procedures for maintaining hygiene and equipment, including personal protective equipment (PPE) such as masks and gowns, thereby exposing decedents to the virus during this period, which proximately caused the decedents' deaths.

¶ 10     In response, Bria filed motions to dismiss plaintiffs' negligence claims with prejudice pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)), alleging it was "rendering assistance" to the State when plaintiffs' decedents died and therefore it was immune from the suits for ordinary negligence. In moving to dismiss, Bria stated that, as a skilled and intermediate long-term care facility licensed under the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2020); see 77 Ill. Admin. § 1130.215(c) (2016)), it fell under section 21(c) of the Act and Executive Order No. 2020-19 because it is a "corporation that rendered assistance at the request of the State *** during an actual or impending disaster." See 20 ILCS 3305/21(c) (West 2020); Exec. Order No. 2020-19, 44 Ill. Reg. 6192. Bria asserted that, at the time of the decedents' deaths, it was rendering assistance to the State by (1) obtaining and preserving PPE; (2) training staff in the effective and efficient use of PPE; (3) continuing to accept admissions from acute care hospitals, thereby doing its part to ensure that the pandemic would not overwhelm the Illinois health care system; and (4) taking necessary steps to prevent, contain, and treat the spread of COVID-19 in the facility. Accordingly, Bria argued it was immune from the claims of ordinary negligence and that those claims must be dismissed by virtue of Executive Order No. 2020-19 and the Act. In support of its motions to dismiss, Bria attached an affidavit from Patti Long, an administrator at Bria, who testified to various actions Bria took to render assistance to the State during the COVID-19 outbreak.

¶ 11    The circuit court denied Bria's motions to dismiss plaintiffs' ordinary negligence claims but granted Bria leave to file a motion to certify a question for interlocutory appeal. Bria timely filed a motion to certify a question for interlocutory review pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). The circuit court granted Bria's motion to certify a question for interlocutory review, over plaintiffs' objections, and stayed discovery proceedings. Plaintiffs filed a motion to reconsider the circuit court's order granting Bria's Rule 308 motion to certify a question for interlocutory review and corresponding stay of discovery pleadings. [1] The circuit court denied the motion to reconsider and certified the following question for interlocutory appeal: "Does Executive Order 2020-19 provide blanket immunity for ordinary negligence to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?"

¶ 12    The appellate court granted Bria leave to appeal. 2023 IL App (2d) 220180, ¶ 11 (citing Ill. S. Ct. R. 308 (eff. Oct. 1, 2019)). The court also granted leave for the Illinois Trial Lawyers Association to submit *amicus* briefs and received briefing from the Illinois Attorney General on the relevant statutory authority. *Id.*

¶ 13    The appellate court considered the certified question and determined the scope of its review was not limited to the language of the question as certified. *Id.* ¶ 13. The court found "the certified question incorrectly describes the scope of the immunity at issue as well as its source." *Id.* ¶ 15. The court first explained the certified question's use of the phrase " 'blanket immunity' " was inapt (*id.*), as it could be taken to "erroneously suggest that Bria could be immune from *both* negligence claims *and* claims of willful misconduct" (emphases in original) (*id.* ¶ 16).

¶ 14    Additionally, the court found the certified question misconceived the source of Bria's potential immunity. *Id.* ¶ 17. The court stated, "[a]ny potential immunity would derive from the Act, not the executive order invoking that Act." *Id.* Specifically, the court stated, "[i]t is axiomatic that an executive order, issued pursuant to statutory authority, cannot convey more than the statute that authorized it." *Id.* ¶ 19. Thus, the court provided that the question "is not what the executive

---

[1]The circuit court consolidated plaintiffs' cases "for purposes of discovery."

order says but rather what the relevant *statute* that the executive order invoked says." (Emphasis in original.) *Id.*

¶ 15    The court did not find any ambiguity in section 21(c) of the Act. *Id.* ¶ 20. Rather, it determined the statutory authority was clear that, except for willful misconduct, any " 'private person, firm or corporation' who renders 'assistance or advice at the request of the State *** *during* [a] *** disaster[ ] shall not be civilly liable for causing the death of, or injury to, *any person*.' (Emphases added.)" *Id.* (quoting 20 ILCS 3305/21(c) (West 2020)). Thus, the court determined that "Bria would have immunity from negligence claims arising during the Governor's disaster declaration *if and only if* it can show it was 'render[ing] assistance' to the State during this time." (Emphasis in original.) *Id.*

¶ 16    The appellate court acknowledged that the Act does not define what it means to " 'render assistance' " but noted that Executive Order No. 2020-19 stated that, " 'for Health Care Facilities, "rendering assistance" in support of the State's response must include measures such as increasing the number of beds, preserving personal protective equipment, or taking necessary steps to prepare to treat patients with COVID-19.' " *Id.* ¶ 18 (quoting Exec. Order No. 2020-19, § 2, 44 Ill. Reg. at 6195). The court agreed "with the Attorney General that the executive order's elaboration is not inconsistent with the relevant portions of the Act." *Id.* Thus, the court rejected plaintiffs' argument that Executive Order No. 2020-19 was "unconstitutional, or *ultra vires*, as the executive order neither overrides nor is inconsistent with the General Assembly's grant of authority to the Governor under the Act." *Id.*

¶ 17    Ultimately, the court modified the certified question as follows:

" 'Does Executive Order No. 2020-19, which triggered the immunity provided in 20 ILCS 3305/21(c) [(West 2020)], grant immunity for ordinary negligence claims to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?' " *Id.* ¶ 21.

The court answered the modified question in the affirmative. *Id.* The court remanded the cause to the circuit court, which it found to be in the best position to evaluate the evidence and determine whether Bria qualifies for statutory immunity

based on whether it was "render[ing] assistance" to the State during the pandemic. *Id.* ¶¶ 22, 25.

¶ 18 This court allowed plaintiffs' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). We allowed the Attorney General to file a brief as *amicus curiae*. We also allowed the Illinois Trial Lawyers Association to file a brief as *amicus curiae* in support of plaintiffs' position. We further allowed the American Health Care Association, Health Care Council of Illinois, Illinois Health Care Association, and LeadingAge Illinois to file a joint brief as *amici curiae* in support of Bria's position. Last, we allowed the Illinois Health and Hospital Association and the Illinois State Medical Society to file a joint brief as *amici curiae* in support of Bria's position. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 19 II. ANALYSIS

¶ 20 Initially, we note the narrow focus in this appeal. We are not called upon to resolve plaintiffs' claims. Instead, the task before us is to answer the certified question. The circuit court certified the following question for interlocutory appeal:

"Does Executive Order 2020-19 provide blanket immunity for ordinary negligence to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?"

The appellate court determined the question certified by the circuit court "incorrectly describe[d] the scope of the immunity at issue as well as its source." 2023 IL App (2d) 220180, ¶ 15. Accordingly, the court modified the certified question as follows:

" 'Does Executive Order No. 2020-19, which triggered the immunity provided in 20 ILCS 3305/21(c) [(West 2020)], grant immunity for ordinary negligence claims to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?' " *Id.* ¶ 21.

¶ 21 We find the appellate court appropriately modified the certified question. See *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 28 (noting this court has modified certified questions to show a proper question of law). We agree with the appellate court that the circuit court's certified question inappropriately used the phrase

- 7 -

" 'blanket immunity' " (2023 IL App (2d) 220180, ¶ 15), which could be taken to "erroneously suggest that Bria could be immune from *both* negligence claims *and* claims of willful misconduct" (emphases in original) (*id.* ¶ 16). During oral argument before this court, both parties agreed the appropriate question here is whether Bria is immune from ordinary negligence claims, not willful misconduct. Accordingly, the appellate court appropriately reframed the certified question to clarify that immunity applies only to ordinary negligence claims. Thus, we answer the certified question, as modified.

¶ 22                                    A. Standard of Review

¶ 23    A certified question under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019) presents a question of law subject to *de novo* review. *Walton v. Roosevelt University*, 2023 IL 128338, ¶ 17. " 'Certified questions must not seek an application of the law to the facts of a specific case.' " *Id.* (quoting *Rozsavolgyi*, 2017 IL 121048, ¶ 21). " 'This court's scope of review is generally limited to the certified question.' " *Id.* (quoting *Rozsavolgyi*, 2017 IL 121048, ¶ 25). "The appellate court's answer to a certified question is reviewed *de novo*." *Rozsavolgyi*, 2017 IL 121048, ¶ 25 (citing *Moore v. Chicago Park District*, 2012 IL 112788, ¶ 9).

¶ 24                                         B. Immunity

¶ 25    The certified question, as modified, states that Executive Order No. 2020-19 triggered the immunity provided in section 21(c) of the Act. The appellate court determined that to mean "[a]ny potential immunity would derive from the Act, not the executive order invoking that Act." 2023 IL App (2d) 220180, ¶ 17. Thus, the court asserted that the question "is not what the executive order says but rather what the relevant *statute* that the executive order invoked says." (Emphasis in original.) *Id.* ¶ 19. The court did not find any ambiguity in section 21(c) of the Act. *Id.* ¶ 20.

¶ 26    Section 21(c) of the Act states,

"Any private person, firm or corporation, and any employee or agent of such person, firm or corporation, who renders assistance or advice at the request of

the State, or any political subdivision of the State under this Act during an actual or impending disaster, shall not be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of willful misconduct." 20 ILCS 3305/21(c) (West 2020).

¶ 27    While we agree with the appellate court that the statutory immunity that derives from section 21(c) of the Act was triggered by the Governor issuing Executive Order No. 2020-19, we part ways with the appellate court where it analyzed the language of section 21(c) of the Act (*id.*), instead of Executive Order No. 2020-19.

¶ 28    Section 7 of the Act gives the Governor the authority to declare that a disaster exists and to issue executive orders during a declared disaster. *Id.* § 7. As a result, while the disaster proclamation was in effect, the Governor used the immunity provided in section 21(c) of the Act (*id.* § 21(c)), to issue Executive Order No. 2020-19, which specifically related to the COVID-19 pandemic. See Exec. Order No. 2020-19, § 3, 44 Ill. Reg. at 6195. Accordingly, the certified question, as modified, requires us to construe the language of Executive Order No. 2020-19 to determine whether it grants immunity for ordinary negligence claims to health care facilities that rendered assistance to the State during the COVID-19 pandemic.

¶ 29    When construing the language of an executive order and determining the Governor's intent, we are guided by the same principles utilized in statutory construction. See *Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081, ¶ 30 (" 'The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent.' " (quoting *In re E.B.*, 231 Ill. 2d 459, 466 (2008))). " 'The language of the statute is the best indication of legislative intent, and we give the language its plain and ordinary meaning.' " *Id.* (quoting *E.B.*, 231 Ill. 2d at 466). " 'We construe the statute as a whole and cannot view words or phrases in isolation but, rather, must consider them in light of other relevant provisions of the statute.' " *Id.* (quoting *E.B.*, 231 Ill. 2d at 466). "When the statutory language is plain and unambiguous, a court may not 'depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express.' " *Id.* ¶ 31 (quoting *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010)). In construing the language, "the court may also consider the reason or purpose for the law, the problems it seeks to address, and the

consequences of construing the statute one way or another." *Robinson v. Village of Sauk Village*, 2022 IL 127236, ¶ 17.

¶ 30    Thus, we look to the plain language of Executive Order No. 2020-19 to determine whether any ambiguity exists.

¶ 31    Section 3 of Executive Order No. 2020-19 provides:

"Pursuant to Section 15 and 21(b)-(c) of the [Act], 20 ILCS 3305/15 and 21(b)-(c), I direct that during the pendency of the Gubernatorial Disaster Proclamation, Health Care Facilities, as defined in Section 1 of this Executive Order, shall be immune from civil liability for any injury or death alleged to have been caused by any act or omission by the Health Care Facility, which injury or death occurred at a time when a Health Care Facility was engaged in the course of rendering assistance to the State by providing health care services in response to the COVID-19 outbreak, unless it is established that such injury or death was caused by gross negligence or willful misconduct of such Health Care Facility, if 20 ILCS 3305/15 is applicable, or by willful misconduct, if 20 ILCS 3305/21 is applicable." Exec. Order No. 2020-19, § 3, 44 Ill. Reg. at 6195.

¶ 32    Section 2 of Executive Order No. 2020-19 further defines "rendering assistance" where it states, "for Health Care Facilities, 'rendering assistance' in support of the State's response must include measures such as increasing the number of beds, preserving [PPE], or taking necessary steps to prepare to treat patients with COVID-19." *Id.* § 2.

¶ 33    The appellate court acknowledged that the Act does not define "rendering assistance" but found Executive Order No. 2020-19's "elaboration is not inconsistent with the relevant portions of the Act." 2023 IL App (2d) 220180, ¶ 18. We agree.

¶ 34    The plain language of Executive Order No. 2020-19 is consistent with section 21(c) of the Act. Section 3 of the executive order explicitly invokes the statutory immunity that derives from section 21(c) of the Act to make clear that, during the Governor's disaster proclamation, except for willful misconduct, a health care facility is immune from ordinary negligence that occurred while the facility was

"rendering assistance" to the State in response to the COVID-19 pandemic. See Exec. Order No. 2020-19, § 3, 44 Ill. Reg. at 6195.

¶ 35     In analyzing the plain language, it is clear the Governor chose to limit immunity to ordinary negligence claims where the language explicitly excluded willful misconduct. See *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 196 (1997) (stating, "[w]here the legislature has chosen to limit an immunity to cover only negligence, it has unambiguously done so"). The plain language further provides that a health care facility is immune from civil liability for "*any* injury or death" that was caused by "*any* act or omission" of the facility that "occurred at a time" when the facility was "engaged in the course of rendering assistance" to the State by providing health care services in response to COVID-19. (Emphases added.) Exec. Order No. 2020-19, § 3, 44 Ill. Reg. at 6195. The language does not state that a health care facility is only immune from ordinary negligence if the negligence relates to COVID-19. Rather, the language states that a health care facility is immune from ordinary negligence if the negligence "occurred at a time" the health care facility was "rendering assistance" to the State by providing health care services during the Governor's disaster proclamation. Thus, given the novelty of COVID-19 and the uncertainty that surrounded COVID-19 at the time the Governor issued Executive Order No. 2020-19, we find a broad reading of the executive order is appropriate and consistent with the plain language. Accordingly, we find no ambiguity exists.

¶ 36     Having found the plain language of Executive Order No. 2020-19 is not ambiguous, we answer the certified question in the affirmative. We agree with the appellate court that Bria would have immunity from ordinary negligence claims arising during the Governor's disaster declaration *if and only if* it can show it was "render[ing] assistance" to the State during this time. Accordingly, we remand to the circuit court to determine the factual question of whether Bria was rendering such assistance.

¶ 37                                    III. CONCLUSION

¶ 38     For the foregoing reasons, we answer the certified question, as modified, in the affirmative, affirm the judgment of the appellate court, and remand the cause to the

circuit court for further proceedings.

¶ 39        Certified question answered.

¶ 40        Appellate court judgment affirmed.

¶ 41        Cause remanded.

¶ 42        JUSTICE CUNNINGHAM, dissenting:

¶ 43        The majority holds that all health care facilities in Illinois that "rendered assistance" to the State during the COVID-19 disaster declaration are immune from all claims of negligence that arose during that time, even if the claims of negligence had nothing whatsoever to do with the provision of any COVID-19 assistance to the State. I disagree with this holding and therefore respectfully dissent.

¶ 44        This appeal arises from five consolidated actions brought in the circuit court of Kane County by the executors and an independent administrator of the estates of individuals who died in April and May 2020, while residing at the defendant nursing home, Geneva Nursing and Rehabilitation Center, LLC, d/b/a Bria Health Services of Geneva. In their complaints, the plaintiffs raised several statutory and common-law claims against the defendant, alleging that it negligently and willfully failed to control the spread of COVID-19 within the facility and that this failure caused the deaths of the decedents.

¶ 45        The defendant moved to dismiss the negligence claims, arguing that it was immune for any negligent conduct that occurred at the time of the decedents' deaths. In support of this argument, the defendant pointed to executive order No. 2020-19 (Exec. Order No. 2020-19, 44 Ill. Reg. 6192 (Apr. 1, 2020), https://www. illinois.gov/government/executive-orders/executive-order.executive-order-number-19.2020.html [https://perma.cc/EKB4-HYNE]), which was issued by Governor Pritzker after the COVID-19 outbreak had been declared a disaster. That order directed health care facilities to "render assistance" to the State by providing health care services in response to COVID-19. The order also stated:

- 12 -

"Pursuant to Sections 15 and 21(b)-(c) of the [Illinois Emergency Management Agency] Act, 20 ILCS 3305/15 and 2l(b)-(c), I direct that during the pendency of the Gubernatorial Disaster Proclamation, Health Care Facilities *** shall be immune from civil liability for any injury or death alleged to have been caused by any act or omission by the Health Care Facility, which injury or death occurred at a time when a Health Care Facility was engaged in the course of rendering assistance to the State by providing health care services in response to the COVID-19 outbreak, unless it is established that such injury or death was caused by *** willful misconduct of such Health Care Facility ***." *Id.* § 3.

¶ 46 The defendant also pointed to section 21(c) of the Illinois Emergency Management Agency Act (Act) (20 ILCS 3305/2l(c) (West 2020)), which is referenced in Executive Order 2020-19. That statutory provision states:

"(c) Any private person, firm or corporation, and any employee or agent of such person, firm or corporation, who renders assistance or advice at the request of the State, or any political subdivision of the State under this Act during an actual or impending disaster, shall not be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of willful misconduct." *Id.*

¶ 47 In its motions to dismiss, the defendant maintained that it was "rendering assistance" to the State at the time of the decedents' deaths by, for example, obtaining and preserving personal protective equipment and training staff in the effective and efficient use of that equipment. The defendant contended, therefore, that it fell within the terms of both Executive Order 2020-19 and section 21(c) and that it was immune from any claims of negligence that arose during the time it was rendering assistance to the State, including the claims of negligence brought by the plaintiffs.

¶ 48 The plaintiffs, in response, disputed the defendant's assertion that it was rendering COVID-19 assistance to the State at the time of the decedents' deaths. In addition and of relevance to this appeal, the plaintiff also maintained that, even if the defendant was rendering assistance at that time, it was not entitled to immunity. According to the plaintiffs, both Executive Order 2020-19 and section 21(c) only granted immunity for claims of negligence that arose out of the act of providing assistance to the State, not for all claims of negligence that happened to occur at the

time the assistance was provided. The plaintiffs further maintained that, in this case, there was no causal relationship between any assistance rendered by the defendant to the State and the defendant's negligent failure to protect the decedents. Therefore, the plaintiffs alleged, the defendant was not entitled to any immunity.

¶ 49     The trial court initially denied the defendant's motion to dismiss plaintiffs' negligence claims but later vacated the denial. The defendant then submitted the following question for certification under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019):

> "Does Executive Order No. 2020-19 provide blanket immunity for ordinary negligence to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?"

The trial court certified the question for appellate review, and the appellate court granted the defendant leave to appeal.

¶ 50     In its opinion answering the certified question, the appellate court first determined that the question incorrectly described the scope of the immunity at issue. 2023 IL App (2d) 220180, ¶¶ 15-16. According to the appellate court, the certified question's use of the term "blanket immunity" was misleading because it suggested that the defendant could be immune from both negligence claims and claims of willful misconduct. *Id.* The appellate court therefore struck the term "blanket immunity" from the certified question.

¶ 51     The appellate court also concluded that the certified question misstated the source of the defendant's potential immunity. The appellate court explained:

> "the certified question also misconceives where [the defendant's] potential immunity derives from. Any potential immunity would derive from the Act, not the executive order invoking that Act. As the Attorney General points out, all Executive Order No. 2020-19 did was invoke the Governor's authority to declare a public health emergency, triggering the preexisting, potential statutory immunity for health care facilities under the Act." *Id.* ¶ 17.

The appellate court later emphasized this point, stating:

"It is axiomatic that an executive order, issued pursuant to statutory authority, cannot convey more than the statute that authorized it. Again, the question is not what the executive order says but rather what the relevant *statute* that the executive order invoked says." (Emphasis in original.) *Id.* ¶ 19.

For these reasons, the appellate court modified the certified question as follows:

" 'Does Executive Order No. 2020-19, which triggered the immunity provided in 20 ILCS 3305/21(c), grant immunity for ordinary negligence claims to healthcare facilities that rendered assistance to the State during the COVID-19 pandemic?' " *Id.* ¶ 21.

The appellate court answered the modified question in the affirmative, stating:

"The statutory authority is clear that, except for willful misconduct, any 'private person, firm or corporation' who renders 'assistance or advice at the request of the State *** *during* [a] *** disaster[ ] shall not be civilly liable for causing the death of, or injury to, *any person.*' (Emphases added.) 20 ILCS 3305/21(c) (West 2020). Thus, Bria would have immunity from negligence claims arising during the Governor's disaster declaration *if and only if* it can show it was 'render[ing] assistance' to the State during this time." (Emphasis in original.) *Id.* ¶ 20.

This appeal followed.

¶ 52                            "Blanket Immunity"

¶ 53        Like the appellate court, the majority here first concludes that the circuit court erred when it used the term "blanket immunity" in the certified question because that term could mistakenly suggest that the defendant is immune from claims of willful misconduct. *Supra* ¶ 21. This conclusion misapprehends the issue presented.

¶ 54        As the plaintiffs point out, the certified question in this case is asking whether a health care facility that rendered assistance to the State during the COVID-19 disaster declaration is immunized for *all* negligent conduct during that time, including conduct that was *completely unrelated* to the act of providing the COVID-19 assistance. To illustrate the plaintiffs' point, consider the following

hypothetical scenario. During the COVID-19 outbreak, a hospital renders assistance to the State by setting aside a certain number of beds to treat patients suffering from the most serious cases of the virus. During this time, an employee of the hospital conducts regularly scheduled repairs on the hospital's boiler. These repairs are completely unrelated to the hospital's treatment of any COVID-19 patients—the hospital employee is a member of the maintenance staff, rather than a health care worker, and the repair work has no connection to any COVID-19 matters. While conducting the repairs, the employee negligently starts a fire that seriously injures dozens of people in the hospital, none of whom are COVID-19 patients. Is the hospital immune from negligence claims arising from the fire?

¶ 55        The foregoing scenario illustrates the idea the certified question is trying to capture with the use of the term "blanket immunity." Whether health care facilities are immune for negligent conduct that is unrelated to the provision of any COVID-19 assistance is the question that should be the focus of this appeal. The term "blanket immunity" does not refer to willful misconduct, which no one disputes is not immunized. By removing that term from the certified question, both the appellate court and the majority in this court have lost sight of the legal issue that prompted the certified question. The term "blanket immunity" should therefore remain in the certified question.

¶ 56                              The Source of Any Immunity

¶ 57        In addition to removing the term "blanket immunity" from the certified question, the appellate court also examined the source of the potential immunity. The appellate court concluded that the source of any immunity in this case had to be section 21(c) of the Act and not Executive Order 2020-19, because "[i]t is axiomatic that an executive order, issued pursuant to statutory authority, cannot convey more than the statute that authorized it." 2023 IL App (2d) 220180, ¶ 19.

¶ 58        The majority here rejects this conclusion, holding instead that any immunity in this case is provided by the Governor's executive order, rather than section 21(c). The sole reason offered by the majority for reaching this result is the following:

        "Section 7 of the Act gives the Governor the authority to declare that a disaster exists and to issue executive orders during a declared disaster. [20 ILCS

- 16 -

3305/7 (West 2020).] As a result, while the disaster proclamation was in effect, the Governor *used the immunity* provided in section 21(c) of the Act (*id.* § 21(c)) to issue Executive Order No. 2020-19, which specifically related to the COVID-19 pandemic. See Exec. Order No. 2020-19, § 3, 44 Ill. Reg. at 6195. Accordingly, the certified question, as modified, requires us to construe the language of Executive Order No. 2020-19 to determine whether it grants immunity for ordinary negligence claims to health care facilities that rendered assistance to the State during the COVID-19 pandemic." (Emphasis added.) *Supra ¶ 28.*

¶ 59    I do not know what the majority means when it says that the Governor "used the immunity" in section 21(c) to issue Executive Order 2020-19. It is health care facilities and other potential defendants that would use the immunity granted by the statute, not the Governor. The majority has thus failed to provide a plausible rationale for looking to the language of the executive order rather than the language of section 21(c) to define the immunity at issue.

¶ 60    Later in its opinion, the majority appears to retreat from its holding, stating that "the executive order explicitly invokes the statutory immunity *that derives from section 21(c) of the Act*." (Emphasis added.) *Supra ¶ 34.* This, of course, is the exact position taken by the appellate court. See 2023 IL App (2d) 220180, ¶ 17 ("Any potential immunity would derive from the Act, not the executive order invoking that Act."). The majority thus both rejects and embraces the same holding of the appellate court.

¶ 61    Immediately after making the previous statement, however, the majority shifts positions again, stating "it is clear the Governor *chose* to limit immunity to ordinary negligence claims where the language explicitly excluded willful misconduct." (Emphasis added.) *Supra ¶ 35.* This statement is clearly incorrect.

¶ 62    The Governor cannot "choose" to define the immunity provided to individuals and entities during a disaster because that immunity is defined by section 21(c) of the Act. The power to make the laws is vested in the legislature. See Ill. Const. 1970, art. IV, § 1. Nothing in section 21(c), or any other provision of the Act, suggests that the legislature has given the Governor the authority to disregard or alter the statutorily defined scope of immunity. To the contrary, the Act states that, during a disaster, "[the Governor may] make, amend, and rescind all lawful

necessary orders, rules, and regulations" but only "to *carry out the provisions of this Act* within the limits of the authority conferred upon the Governor." (Emphasis added.) 20 ILCS 3305/6(c)(1) (West 2022). To allow the Governor to "choose" what immunity exists would therefore allow the Governor to rewrite the law, in violation of fundamental separation of powers principles.

¶ 63      The appellate court was correct to hold that the source of the immunity in this case is section 21(c) of the Act and not Executive Order 2020-19. The analysis is straightforward. In section 21(c), the legislature defined the scope of the immunity for individuals and firms who render assistance to the State during a disaster. When the Governor declares a disaster, that action "triggers" the statutory immunity contained in section 21(c), bringing it into effect. The Governor may thereafter issue executive orders and regulations that are consistent with the statute, but the scope of the immunity may not be altered.

¶ 64                                    Section 21(c)

¶ 65      Section 21(c) of the Act states that any person or firm that renders assistance to the State during a disaster "shall not be civilly liable" for negligently causing injury or property damage to any person. *Id.* § 21(c). The defendant contends this provision means that *any* negligent act that occurs during a disaster is immunized, so long as the defendant was rendering assistance to the State at the time the negligent act was committed, regardless of whether that act was in any way related to the assistance being rendered to the State. I disagree.

¶ 66      To accept the defendant's argument, we would have to read section 21(c) as stating that any person or entity that renders assistance to the State during a disaster "shall not be civilly liable" for negligently causing injury or property damage to any person *even if the negligent conduct is wholly unrelated to the provision of such assistance to the State*. In other words, accepting the defendant's argument would mean effectively adding language to the statute, thereby expanding the provision beyond its intended meaning. This, of course, is impermissible. See *People v. Grant*, 2022 IL 126824, ¶ 25.

¶ 67      Further, even if the defendant's reading of section 21(c) was one possible reading of the statute, that fact would at most render the statute ambiguous. Since

the immunity provided under section 21(c) was enacted in derogation of the common law, the provision must be strictly construed and given the narrower of two possible constructions. See *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). Thus, the statute must be read as immunizing *only* negligent conduct arising out of the act of providing assistance to the State.

¶ 68 Finally, "[w]hen a proffered reading of a statute leads to absurd results or results that the legislature could not have intended, courts are not bound to that construction, and the reading leading to absurdity should be rejected." *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27. That is the case here. The defendant's reading of section 21(c) must be rejected because it leads to absurd results. Under that reading, any number of scenarios—the hospital fire hypothetical noted above, an accident in a hospital kitchen, or a medical clinic driver negligently injuring a pedestrian—would all be immunized from any negligence claims so long as the facility was "rendering assistance" to the State, even though the negligent acts had nothing whatsoever to do with the assistance being rendered. This cannot possibly have been the intent of the legislature.

¶ 69 The most reasonable reading of section 21(c) is that it immunizes negligent conduct arising out of the act of rendering assistance to the State during a disaster. This reading comports with both the plain terms of the statute and its purpose, which is to incentivize entities and individuals to render assistance to the State during a disaster, while at the same time avoiding the absurd result of immunizing all negligent conduct that is completely unrelated to the rendering of that assistance.

¶ 70 Executive Order 2020-19

¶ 71 Rather than looking at the language of section 21(c), the majority incorrectly looks to the language of Executive Order 2020-19 to determine the scope of immunity in this case. Not only is the executive order the wrong source of any immunity, but the majority reaches the wrong conclusion in examining that order.

¶ 72 The majority concludes that the immunity granted by the Governor to health care facilities during the COVID-19 disaster was not limited to negligent conduct that arose out of the act of providing assistance to the State. Rather, according to the majority, the Governor granted immunity for *any* negligent act that " 'occurred

at a time' " when the facility was " 'rendering assistance,' " even if the negligent act bore no relationship whatsoever to the COVID-19 assistance. *Supra* ¶ 35 (quoting Exec. Order No. 2020-19, § 3, 44 Ill. Reg. at 6195). In other words, the majority holds that the Governor intended to immunize negligent acts such as the hypothetical hospital fire and other scenarios noted above from any negligence claims. I disagree.

¶ 73 The executive order must be read as immunizing only negligent conduct arising out of the act of providing assistance to the State for the same reasons that compel that result with respect to section 21(c): nothing in the language of the executive order states that negligent conduct is immunized even if it has nothing whatsoever to do with the act of providing COVID-19 assistance; the executive order is subject to the rules of statutory interpretation and therefore must be construed narrowly, not broadly; and it would be absurd to conclude that the Governor intended to immunize negligent acts that were completely unrelated to the act of rendering assistance to the State.

¶ 74 Further, if anything, the language of the executive order is even clearer than that of section 21(c). The executive order states that health care facilities are immunized only for any injuries negligently caused while "engaged in the course of" providing COVID-19 assistance to the State. Exec. Order No. 2020-19, § 3, 44 Ill. Reg. at 6195. This wording plainly refers to negligent conduct occurring in the act of providing assistance to the State rather than all, unrelated negligent conduct.

¶ 75 The majority is clearly concerned about potential liability for health care facilities in relation to COVID-19. As the majority notes, COVID-19 was a novel virus, and there was "uncertainty that surrounded" the disease (*supra* ¶ 35) in the early months of the pandemic. However, whether this defendant or other health care facilities should ultimately be held liable for any COVID-19 injuries or deaths is not at issue in this case. The narrow legal question presented in this appeal is whether health care facilities are immunized for negligent conduct that was entirely unrelated to the act of providing COVID-19 assistance to the State. By answering that question yes, the majority bars recovery for any number of deserving plaintiffs throughout the State, for reasons that have nothing to do with the COVID-19 disaster declaration. I disagree with this result because it cannot be reconciled with

the plain meaning of either section 21(c) of the Act or Executive Order 2020-19. I therefore respectfully dissent.